**Robert S. Markman**
18554 Frankfort Street
Northridge, California 91324
TEL. 818.998.0362
robertmarkman@msn.com

Pro Se Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LA CV15 3335 DDP (JCG)

ROBERT S. MARKMAN

     Plaintiff

     vs.

RACHEL LASOTA, MAKSIM
DEGTYAR, KIM WILSON,
MARIANNE ECKHART, CHP
OFFICER JEREMY TOLEN,
CHP OFFICER KEANE, CHP
SARGEANT WAUGHAN, DAVID
CHU M.D., CLINT SALO
D.O, J. KELLOG M.D,
KIYO TESHIMA, COLLEGE
HOSPITAL OF
CERRITOS,CALIFORNIA
HIGHWAY PATROL, MEDICAL
BOARD OF CALIFORNIA

AND TEN UNKNOWN NAMED
DEFENDANTS ( "DOES 1-10),
INCLUSIVE
     Defendants

**COMPLAINT FOR DAMAGES (42
U.S.C.§1983, 28 U.S.C
§1331, §1343 and §1367)**

**JURY TRIAL DEMANDED**



PAID

MAY - 4 2015

Clerk, US District Court
COURT 4612



1

2                              **JURISDICTION and VENUE**

3

4   **1.** This is an action for redress for deprivations of

5      constitutional rights under 42 U.S.C. §1983 *et seq*.

6   **2.** Additionally, the jurisdiction of this court is

7      invoked pursuant to 28 U.S.C. § 1331, §1343 and

8      §1367.

9                              **II. PARTIES**

10  3. Plaintiff **ROBERT S. MARKMAN** is a resident of the

11     state of California.

12  4. Defendant **RACHEL LASOTA** was at all times herein

13     mentioned, an employee of the state of California.

14     In that capacity she was acting under color of state

15     law during the relevant acts and omissions alleged

16     herein. She is being sued in her individual

17     capacity.

18  5. Defendant **MARIANNE ECKHART** was at all times herein

19     mentioned, an employee of the state of California.

20     In that capacity she was acting under color of state

21     law during the relevant acts and omissions alleged

22     herein. She is being sued in her individual

23     capacity.

24  6. Defendant **MAKSIM DEGTYAR** was at all times herein

25     mentioned, an employee of the state of California.

In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued in his individual capacity.

7. Defendant **KIM WILSON** was at all times herein mentioned, an employee of the state of California. In that capacity she was acting under color of state law during the relevant acts and omissions alleged herein. She is being sued in her individual capacity.

8. Defendant **JEREMY TOLEN** was at all times herein mentioned, an officer of the CALIFORNIA HIGHWAY PATROL In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued in his individual capacity.

9. Defendant **CHP OFFICER KEANE ID # 20727** was at all times herein mentioned, an officer of the California Highway Patrol. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued in his individual capacity.

10. Defendant **DAVID CHU**, M.D. was at all times herein mentioned, a physician working as an independent contractor for or employed by College Hospital, Cerritos. In that capacity he was acting under color

of state law during the relevant acts and omissions alleged herein, acting as a willing participant in joint action with the State and its agents. He is being sued in his individual capacity.

11. Defendant **CLINT SALO**, D.O. was at all times herein mentioned, a physician working as an independent contractor for or employed by College Hospital, Cerritos. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein, acting as a willing participant in joint action with the State and its agents.  He is being sued in his individual capacity.

12. Defendant **J. KELLOG. M.D. was** at all times herein mentioned, a physician working as an independent contractor for or employed by College Hospital, Cerritos. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein, acting as a willing participant in joint action with the State and its agents. He is being sued in his individual capacity.

13. Defendant **KIYO TESHIMA R.N.** was at all times herein mentioned, a nurse working as an independent contractor for or employed by College Hospital, Cerritos. In that capacity she was acting under color of state law during the relevant acts and

omissions alleged herein, acting as a willing participant in joint action with the State and its agents. She is being sued in her individual capacity.

14. Defendant **COLLEGE HOSPITAL OF CERRITOS** is a psychiatric hospital located in Cerritos, California where the plaintiff was incarcerated on a 72 hour "5150" hold.

15. Defendant **CALIFORNIA HIGHWAY PATROL** is an agency of the state of California and as such is the employer of the California Highway Patrol defendants

16. Defendant **MEDICAL BOARD OF CALIFORNIA** is an agency of the state of California and as such is the employer of the Medical Board of California defendants.

17. Plaintiff is ignorant of the true names of DOES 1-10 and prays leave of the Court to insert the true names and capacities of such Defendants when they become known or are ascertained, together with appropriate charging allegations.

18. Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein was the agent, employee or representative of each of the remaining defendants, and in doing the things herein mentioned, were acting in the course and scope of

such agency and employment. It is further alleged that in doing the acts or omissions complained of herein, that Defendants, and each of them, acted or omitted to act in concert as agents of and/or on behalf of the other defendants named herein. Defendants, and each of them, did acts and omissions alleged herein maliciously in bad faith and with knowledge that their conduct violated well and clearly established and settled law and the Constitution of the United States.

### III. FACTUAL ALLEGATIONS

3. The plaintiff is a medical doctor licensed to practice medicine in the state of California. On December 23, 2013, following an accusation by the Medical Board of California and a formal hearing, the plaintiff's license was restricted and conditions were placed on his practice of medicine including a requirement to attend quarterly probation interviews at the Medical Board of California's probation unit in Cerritos, CA.

4. Medical Board of California (MBC) Probation officer Dianna Gharibian and her supervisor, defendant Rachel LaSota were assigned to the plaintiff. These two required that the plaintiff be frisked for

weapons every time he arrived at the Cerritos office for his interview. The plaintiff was frisked at his first interview without incident.

5. During the time between the first and second quarterly probation interviews the plaintiff sustained a left shoulder injury and when he appeared at his second quarterly interview on March 25, 2014 he told the security person who was about to frisk him for weapons that due to pain from his shoulder injury, he would be unable to put his left arm behind his back in the position the security person insisted on. The security person ignored him and grabbed the plaintiff's left arm, pulled it behind the plaintiff's back and violently forced it upwards. The plaintiff pulled away in pain and the security person then immediately threw the plaintiff to the floor at which time the plaintiff sustained further injury to his left shoulder. The plaintiff got up and then complied with the security person's new order to stand facing a wall, not with his hands behind his back but with his hands in front of him touching the wall. He was frisked without further incident and his interview then proceeded uneventfully.

6. On March 28, 2014, three days after being assaulted by the Medical Board Probation department security person, the plaintiff sought medical treatment for unrelenting left shoulder pain. He was diagnosed with a partially torn left rotator cuff by his personal physician who began to treat him with a series of injections in his left shoulder joint intended to promote healing of the torn rotator cuff. After the first injection the plaintiff developed a large hematoma over his left shoulder.

7. On May 6, 2014 the plaintiff received a phone call from his MBC probation officer, Dianna Gharibian, advising him to report to the Cerritos Probation office on May 29, 2014 for his third quarterly interview.

8. On May 12, 2014 the plaintiff sent an email to MBC probation officer Dianna Gharibian informing her that he had suffered an injury to his left shoulder at the last interview, that he was undergoing treatment and that he would only come for an interview if she would guarantee that he wouldn't be assaulted again by their security person.

9. In this email the plaintiff suggested substituting a telephone interview for the scheduled in-person interview as an option to avoid any further problems

until his shoulder improved. The plaintiff stated in his email that if an in-person interview was absolutely necessary he would be willing to strip naked and allow his belongings and clothes to be searched for weapons in order to avoid the chance of further injury to his shoulder while being frisked. His shoulder had unfortunately shown no signs of improvement.

10. This email was completely ignored by the personnel at the probation office and there was absolutely no response to it from either Ms. Gharibian or defendant LaSota.

11. On 5/27/14, two days before the scheduled interview, due to the refusal of Ms. Gharibian to respond to his email, the plaintiff telephoned Ms. Gharibian who then demanded that the plaintiff come in for his interview and submit to being searched and frisked by security personnel. The plaintiff said he would come but only if he could bring along an observer to video tape the search.

12. Because of the untenable situation being forced on him that the plaintiff believed was hazardous to his physical well-being, on 5/28/14 he made a telephone call to Ms. Gharibian's supervisor, defendant Rachel LaSota.

13. Defendant LaSota advised the plaintiff that she would not allow Dr. Markman to bring along an observer and she demanded that Dr. Markman come to his interview and submit to being frisked. Defendant LaSota stated that she would talk to the security personnel and she would have a resolution in the morning when the plaintiff arrived for his interview. The plaintiff said that he had given the probation office two weeks notice of his shoulder problem and he had no intention of driving two hours to Cerritos only to find that there was no satisfactory resolution.

14. Dr. Markman then offered that as an alternative he would come to the interview naked so that no search would be necessary. Defendant LaSota did not object to this offer and said "fine we'll see you in the morning."

15. The plaintiff arrived for his 10:00 AM interview at 10:00 AM wearing only his underwear and when he asked for Rachel LaSota he was told that he could leave because she would not see him and there would be no interview because he was not dressed appropriately.

16. The plaintiff then asked the receptionist to tell him when it was 10:45 AM explaining that that was

when someone was arriving to pick him up. She agreed
to tell him and the plaintiff sat down to wait for
his ride but shortly after sitting down he decided
to leave the office to wait in the parking lot. He
took an elevator down to the lobby where, unknown to
the plaintiff, a CHP officer had been called by
LaSota to detain him. This CHP officer then detained
the plaintiff in the parking lot. The plaintiff
explained to this CHP officer why he was wearing
only a shirt and his underwear and he demonstrated
to him his inability to place his left arm behind
him in a raised position and he also showed him the
obvious hematoma that was present on his left
shoulder.

17. The plaintiff and this CHP officer were quickly
joined by defendant Investigator Maksim Degtyar,
defendant senior investigator Kim Wilson, defendant
investigator Marianne Eckhart, defendant Probation
Unit Supervisor LaSota, and approximately 16
additional CHP and Sheriff's personnel.

18. The plaintiff then observed Deftyar, Wilson,
Eckhart and LaSota all speaking to CHP officers
Tolen and Keane for over one hour, after which one
of the CHP officers demanded that Markman turn
around and place his hands behind his back. When

Markman hesitated and tried to explain his shoulder injury the CHP officers violently restrained him then threatened to TASE him and the plaintiff submitted. The CHP officers handcuffed Markman's hands behind his back and they ignored Markman's complaints of pain.

19. Eventually the plaintiff was transported to College Hospital where he was involuntarily admitted on a 5150 hold based on an APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT prepared by CHP Officers Tolen and Keane. These defendants claimed that what they wrote in this APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT was based on their own "personal knowledge" of the plaintiff and on additional information provided to them by the Medical Board of California Probation Department defendants.

20. Defendants LaSota, Degtyar, Wilson, and Eckhart (all of the Probation department employees) knowingly provided completely false information to the CHP officers and conspired with them for over an hour to come up with completely fraudulent grounds to incarcerate Markman on a 72 hour Welfare and Institutions section 5150 hold. Defendant CHP officers Keane and Tolen knowingly added their own

completely false statements, claiming that they had their own personal knowledge of the plaintiff. None of the statements provided in the APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT are factual and all of the above named defendants knew that these statements were all completely and utterly false. All of these defendants knew that even if any of the statements was true they could not possibly provide legitimate grounds for a 5150 hold.

21. The APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT prepared by Officer Tolen states:

   a. *"I was called by the CA Medical Board in Cerritos for a non-cooperative doctor that showed up for a psych eval/hearing wearing only his underwear. He resisted being detained.*

   b. *Robert Markman has a documented prior history of violence of which I am personally aware of due to an ongoing investigation.*

   c. *When Markman was contacted by social services and LAPD for injecting his daughter's vagina daily with propofol, he assaulted them and hospitalized the officers.*

d. *Markman is also known to sleep in bed with his adult daughter after drugging her with propofol."*

**22.** A form labeled <u>Narrative/Supplemental</u> prepared by defendant  CHP officer D. Keane was attached to the APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT prepared by Officer Tolen. It states:

a. *"At 1055 hours I received a call from Sergeant Waughan #17299 of a non-cooperative doctor that showed up to the California Board in Cerritos for his psychological evaluation/hearing wearing only his underwear. I contacted Dr. Markman sitting on the curb edge in the parking lot. Officer Tolen, #17998, gave him a lawful order to stand up, turn around and place his hands over his head in order to detain Dr. Markman for 5150.*

b. *Officer Tolen told Dr. Markman-we are here to help you, not hurt you.*

c. *Officer Tolen has personal knowledge of Dr. Markman's ongoing case with the California Medical Board involving Dr. Markman injecting his adult daughter's vaginal region with Propofol anesthetic.*

    d. *Dr. Markman has also been documented by the L.A. Department of Social Services for this inappropriate contact with his family member, in addition to sleeping in the same bed with her while she has been drugged.*

    e. *Additionally, he has booby-trapped his residence and*

    f. *He attacked two Los Angeles Police Department Detectives, hospitalizing them.*

    g. *Prior to heading to the California Medical Board today, Probation Unit Supervisor Rachel LaSota advised Markman that he was not to bring any weapons to the California Medical Board's office since the LAPD has records that he failed to surrender all of his registered weapons after being placed on probation for attacking the detectives.*

    **h.** *Markman advised Supervisor LaSota, I am going to come with nothing but the gun God gave me."*

23. The ARREST-INVESTIGATION REPORT prepared by defendant CHP officer J. Tolen ID # 17998 states:

    a. *"At 1055 hours I received a call from Sergeant Waughan #17299 of a non-cooperative doctor that showed up to the California Board in Cerritos*

for his psychological evaluation/ license
hearing wearing only his underwear.

b. Rachel LaSota informed all responding CHP
officers that Markman had managed to make it all
the way up to the 7th floor of their building
and walk right into the lobby of their office.

c. Markman's photo is posted up adjacent to the
left side of the office door informing all MBC
employees not to allow him to enter due to his
prior instances of violence and mental
instability.

d. Markman refused to leave the premises when he
was asked to do so by MBC staff.

e. Markman arrived inappropriately attired and
Markman was physically restrained and escorted
out of the building by security.

f. I gave Dr. Markman a lawful order to stand up,
turn around, and place his hands behind his head
in order to detain Markman per 5150.05(a)W & I
due to credible information provided by MBC to
CHP regarding Markman's mental health history.

g. I was made aware by MBC in the prior weeks that
Markman would be showing up to the MBC Probation
Unit office sometime in May. Supervisor LaSota
was so concerned regarding the potential

*volatility of Markman during this appointment that she requested a CHP Safety Services Program(SSP) unit stand by for the entire duration of this scheduled appointment; however, her request was denied by MBC headquarters in Sacramento.*

h. *As Officer Keane and I started to detain Dr. Markman, he physically resisted, quickly and forcefully moving his arms and hand in front of his torso and tensing up...I told Dr. Markman in a soothing tone of voice, We are here to help you, not hurt you.*

i. *I was made aware that MBC has an ongoing case investigation of Dr. Markman for mental illness and allegedly having inappropriate physical/sexual contact with his live in, adult daughter.*

j. *Dr. Markman has admitted to MBC that he regularly drugs his daughter with Propofol and that no other doctor can be allowed to treat her.*

k. *According to LAPD documentation, Markman attacked and hospitalized two LAPD detectives, in addition to having his residence booby trapped.*

l. *Prior to heading to the MBC Probation Unit Office in Cerritos on May 29th, Probation Unit Supervisor Rachel LaSota advised Markman that he was not to go bring any weapons to the MBC office. LAPD has records indicating Markman failed to surrender all of his registered weapons after being placed on probation for attacking the detectives.*

m. *Markman warned Supervisor LaSota, I am going to come with nothing but the gun God gave me."*

24. The record of advisement written by College Hospital admitting R.N. Chantal states:

a. *"As a result of a mental disorder you are likely to:*

     1. *Harm yourself*

     2. *Be unable to take care of your own food, clothing, and housing needs*

b. *You showed up for a <u>psych evaluation</u> wearing only underwear*

c. *You have  a history of violence with ongoing investigation*

d. *You assaulted officers*

e. *You are known to sleep in bed with your adult daughter after drugging her with propofol"*

25. The plaintiff was not examined by a psychiatrist until he had been incarcerated in College Hospital for twenty four hours. Defendant psychiatrists Chu and Salo both deliberately, unethically and fraudulently worded their evaluations to justify a 5150 hold. Despite deliberately falsifying their evaluations, Chu and Salo's evaluations do not provide a legal basis for a 5150 hold. Defendant psychiatrists Chu and Salo refused to release the 72 hour hold on the plaintiff even though their own psychiatric evaluations and their own Global Assessment of Function (GAF) scale scoring clearly indicated that the plaintiff's mental status did not meet the legal requirements for a 5150 hold.

26. Defendant Kellog M.D. oversees and approves the work of Chu and Salo. He reviews and adds his signature to their written psychiatric evaluations. From reading their evaluations it was clear to Kellog that the plaintiff's mental status did not meet the legal requirements for a 5150 hold, yet Kellog refused to release the Plaintiff from custody.

27. Defendant psychiatrist David Chu wrote a psychiatric discharge summary in which every statement he made was knowingly false. These

statements falsely portrayed the plaintiff's mental status in the following terms: "patient is suicidal, homicidal, has paranoid delusions; diagnosis is psychosis, rule out schizophrenia, rule out bipolar disorder".

28. Defendant KIYO TESHIMA, R.N. works for College Hospital, Cerritos. She holds the title of "Director of Psychiatric Services" at College Hospital and she is the designated Patient's Rights Advocate at College Hospital. She is required by California state law to see and provide services to all patients requesting a Patient's Rights Advocate. During the entire 72 hours the plaintiff was involuntarily confined at College Hospital, defendant TESHIMA refused to see or provide services to the plaintiff and in the days and weeks following his release she continued to refuse to see or provide services to the plaintiff.

29. Despite the fact that no medication was ever prescribed by either psychiatrist, defendant psychiatrist Chu repeatedly wrote "patient refuses all medication."

30. Defendant COLLEGE HOSPITAL ignored the legal requirements of a 5150 hold by not having a professional evaluate the plaintiff before

incarcerating him at College Hospital. Defendant
College Hospital knowingly, negligently, and in
conspiracy with defendants Chu, Kellog and Salo
conspired to hold the plaintiff against his will
using deliberately false psychiatric evaluations in
order to line their pockets. College Hospital also
is attempting to cover up its misdeeds by refusing
to provide complete records of the plaintiff's
incarceration despite being required to do so by
law.

### FIRST CLAIM

**A. 42 U.S.C.1983-VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURE AND WRONGFUL DETENTION AND PSYCHIATRIC EVALUATION PURSUANT TO CA WELFARE AND INSTITUTIONS CODE §5150 WITHOUT PROBABLE CAUSE**

### AGAINST ALL DEFENDANTS

**31.** Plaintiff incorporates by reference each and every
allegation contained in all previous paragraphs as
though fully set forth.

**32.** The Defendants, each and every one of them, acted individually to deprive the plaintiff of his constitutional right to be free from unreasonable seizure and confinement. Defendants RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON, MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE, CHP SARGEANT WAUGHAN all, as employees of the State of California, acted under color of state law. Defendants DAVID CHU M.D. and CLINT SALO D.O also acted under color of state law, acting as willing participants in joint action with the State and its agents. The Defendants had no probable cause to seize and confine the plaintiff to College Hospital for 72 hours based on a 5150 application.  They accomplished an illegal seizure and imprisonment by knowingly and maliciously fabricating and using multiple false statements for the purpose of depriving the plaintiff of his freedom.

**33.** The defendants' conduct was the proximate cause of harm and damage to the plaintiff and by reason of the foregoing alleged acts and conduct the PLAINTIFF is entitled to damages against defendants according to proof at trial.

**34.** The defendants engaged in the aforementioned acts maliciously, callously, oppressively, wantonly,

recklessly, fraudulently, with deliberate
indifference to the rights allegedly violated,
despicably and with evil motive and/or intent, and
in disregard of the rights of the plaintiff..  The
plaintiff is therefore entitled to and does seek
punitive damages against the defendants. WHEREFORE
plaintiff seeks relief in an amount according to
proof at trial.

**SECOND CLAIM**

**42 U.S.C.1983-CONSPIRACY TO VIOLATE THE PLAINTIFF'S
FOURTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHT TO BE
FREE FROM UNREASONABLE SEIZURE against defendants
RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON,  MARIANNE
ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE
and CHP SARGEANT WAUGHAN**


**35.** Plaintiff incorporates by reference each and every
allegation contained in all previous paragraphs as
though fully set forth.

**36.** The Defendants named above in the FIRST CLAIM, each
and every one of them, conspired with each other to
deprive the plaintiff of his constitutional right to
be free from unreasonable seizure and confinement.

Defendants had no reasonable suspicion or probable cause to detain, arrest or confine the plaintiff based on the legal requirements of a 5150 application. They accomplished an illegal seizure and imprisonment by knowingly and maliciously conspiring to fabricate and use a multitude of false statements for the purpose of depriving the plaintiff of his freedom.

37. The defendants' conduct was the proximate cause of harm and damage to the plaintiff and by reason of the foregoing alleged acts and conduct the PLAINTIFF is entitled to damages against defendant officers according to proof at trial.

38. The defendants engaged in the aforementioned acts maliciously, callously, oppressively, wantonly, recklessly, fraudulently, with deliberate indifference to the rights allegedly violated, despicably and with evil motive and/or intent, and in disregard of the rights of PLAINTIFF ROBERT MARKMAN. PLAINTIFF is therefore entitled to and does seek punitive damages against the defendants. WHEREFORE plaintiff seeks relief in an amount according to proof at trial.

### THIRD CLAIM

## DEPRIVATION OF CONSTITUTIONAL RIGHTS-42 U.S.C.

### Excessive Force

## Against Defendant Jeremy Tolen and  CHP Defendant

## officer Keane (FOURTH AND FOURTEENTH AMENDMENTS)

39. Plaintiff incorporates all prior paragraphs of this complaint, as though fully set forth herein.

40. The defendant police officers used unreasonable and excessive force in detaining, arresting, confining and incarcerating plaintiff Robert Markman on December 21, 2011

41. The defendant officers' conduct was the proximate cause of harm and damage to the plaintiffs and by reason of the foregoing alleged acts and conduct, the plaintiff is entitled to damages against defendant officers, all according to proof at trial.

42. The defendant officers engaged in the aforementioned acts maliciously, callously, oppressively, wantonly, recklessly, fraudulently, and with deliberate indifference to the rights allegedly violated, despicably and with evil motive and intent, and in disregard to the rights of Robert Markman. Markman is therefore entitled to and does seek punitive damages against the defendant officers.

### FOURTH CLAIM

**DEPRIVATION OF CONSTITUTIONAL RIGHTS-**
**FOURTH/FIFTH/FOURTEENTH AMENDMENTS-42U.S.C.§ 1983-**
**DELIBERATE INDIFFERENCE TO A KNOWN OBJECTIVELY SERIOUS**
**MEDICAL NEED AGAINST DEFENDANTS LASOTA, TOLEN, KEANE,**
**CHU AND SALO**

**43.** The defendants showed a deliberate indifference to
the plaintiff's known serious medical needs;

    a. Defendant LaSota demanded that the plaintiff be
subjected to being frisked for weapons even
after she had been informed by the plaintiff
that he was unable to place his arms into the
position demanded by her security personnel in
order to be frisked. She knew that the plaintiff
had suffered a torn left rotator cuff at the
hands of her security person on March 25, 2014.
She knew that the plaintiff had offered to strip
naked to avoid being subjected to further
injury. She in fact, had accepted that offer in
a telephone conversation with the plaintiff.

    b. Defendants DAVID CHU M.D. and CLINT SALO D.O
knew that the plaintiff, due to his shoulder
injury needed to be removed from the presence of
the violent psychotic patients he was forced to
sleep in the same room with since his left
shoulder injury would have prevented him from

defending himself against these patients had
they actually decided to carry out their very
real repeated threats to murder him. These two
defendants admitted that the plaintiff should
have been transferred to a safer patient unit
while he incarcerated at College Hospital for
the 72 hour 5150 evaluation. Defendants DAVID
CHU M.D. and CLINT SALO D.O's deliberate
indifference to this known objective medical
need caused severe emotional distress to the
plaintiff and resulted in him spending the 72
hours unable to sleep at all and in constant
fear for his life.

**44.** At least  forty five minutes before forcing the
plaintiff to place his hands behind his back to be
handcuffed, the defendant CHP officers were informed
by the plaintiff that he had a left shoulder injury
that would cause him severe pain if his left arm was
forced behind his back. Nevertheless, and despite
protests by the plaintiff, defendant CHP officers
Tolen and Keane grabbed the plaintiff's arms and
then threatened to TASE him if he did not allow them
to place his arms behind his back. Due to the threat
of TASING him, the plaintiff then was forced to
allow the officers to handcuff him with his arms

behind his back. Despite the plaintiff's repeated complaints of pain he was then placed in the front of a patrol car where he complained of pain continually for 45 minutes to no avail as his complaints were completely ignored by defendant officers Tolen and Keane.

45. Despite the fact that the admitting psychiatrist at College Hospital DEFENDANT Clint Salo recognized immediately that the plaintiff did not have a psychiatric illness that could possibly meet the legal requirements of a 5150 hold (Salo's admitting diagnosis-adjustment disorder-unspecified) and did not belong incarcerated at College Hospital much less in a ward full of violent psychotic patients and despite plaintiff repeatedly reporting to the staff that he had been threatened by violent psychotic patients who threatened to kill him, the plaintiff was forced to share a room with these violent psychotic patients for 72 hours and consequently was in constant fear for his life until his release. The defendant psychiatrists both refused repeatedly to transfer the plaintiff to a safer environment and refused to release him despite their knowledge that he was no way he could legally be held under Welfare & Institutions 5150.

**46.** The defendants engaged in the aforementioned acts and omissions maliciously, callously, oppressively, wantonly, recklessly, fraudulently, and with deliberate indifference to the rights allegedly violated, despicably and with evil motive and intent, and in disregard to the rights of Robert Markman. Markman is therefore entitled to and does seek punitive damages against the defendant officers.

**FIFTH CLAIM**

**DEPRIVATION OF CONSTITUTIONAL RIGHTS-FOURTH AMENDMENT-42U.S.C.§ 1983-FAILURE TO INTERVENE TO PREVENT A VIOLATION OF THE FOURTH AMENDMENT AND FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS**

**47.** Plaintiff incorporates all paragraphs of this complaint, as though fully set forth herein.

**48.** Each and every defendant witnessed the other defendants violating the plaintiff's fourth amendment right to be free from unreasonable seizure but failed to intervene to prevent the violation. Defendants RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON, MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE, CHP SARGEANT WAUGHAN, DAVID CHU M.D. and CLINT SALO D.O each individually knew that

the information used to obtain and maintain a 5150
hold on the plaintiff was all false and fabricated
for the sole purpose of maliciously abusing the law
in order to punish, get even with and injure the
plaintiff for their own personal profit.

49. Plaintiff incorporates all paragraphs of this
complaint, as though fully set forth herein.

50. The defendants' conduct was the proximate cause of
harm and damage to the plaintiff and by reason of
the foregoing alleged acts and conduct, the
plaintiff is entitled to damages against defendants,
all according to proof at trial.

51. The defendants engaged in the aforementioned acts
maliciously, callously, oppressively, wantonly,
recklessly, fraudulently, and with deliberate
indifference to the rights allegedly violated,
despicably and with evil motive and intent, and in
disregard to the rights of Robert Markman. Markman
is therefore entitled to and does seek punitive
damages against the defendants.

## SIXTH CLAIM

### (42 U.S.C.1983 AND 28 U.S.C 1367)STATE CREATED
### DANGER AGAINST ALL DEFENDANTS

52. Plaintiff incorporates all prior paragraphs of this complaint, as though fully set forth herein.

53. Liability exists when the state affirmatively places a particular individual in a position of danger the individual would not have otherwise faced.

54. While incarcerated the plaintiff was repeatedly threatened by psychotic patients whom he was forced to share a room with. These patients threatened to kill him and as a consequence the plaintiff spent the entire 72 hours he was incarcerated awake.

## SEVENTH CLAIM

**42 U.S.C.1983-VIOLATION OF THE PLAINTIFF'S FIRST AMENDMENT CONSTITUTIONAL RIGHT OF FREE SPEECH AND FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION AGAINST DEFENDANTs LASOTA and ECKHART.**

55. Plaintiff incorporates all prior paragraphs of this complaint, as though fully set forth herein.

56. The plaintiff's attempt to be interviewed by Medical Board of California probation officers while wearing only underwear is protected as free speech under the First Amendment and Fourteenth Amendment of the Constitution.

57. Defendants LaSota and Eckhart used this act of free speech as a basis for incarceration under California 5150, a violation of the First Amendment right of the plaintiff.

58. Defendants LaSota and Eckhart engaged in discriminatory treatment based on an irrational and wholly arbitrary basis motivated by spiteful effort to get the plaintiff for reasons wholly unrelated to any legitimate state objective.

59. The defendants' conduct was the proximate cause of harm and damage to the plaintiff, and by reason of the foregoing alleged acts and conduct, the plaintiff is entitled to damages against defendant officers, all according to proof at trial.

60. The defendants engaged in the aforementioned acts maliciously, callously, oppressively, wantonly, recklessly, fraudulently, and with deliberate indifference to the rights allegedly violated, despicably and with evil motive and intent, and in disregard to the rights of Robert Markman. Markman is therefore entitled to and does seek punitive damages against the defendant officers.

## EIGHTH CLAIM

**FALSE IMPRISONMENT (28 U.S.C 1367) AGAINST ALL DEFENDANTS**

61. Plaintiff incorporates by reference each and every allegation contained in all previous paragraphs as though fully set forth.

62. The Defendants, each and every one of them, acted individually to falsely imprison the plaintiff. Defendants RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON, MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE, CHP SARGEANT WAUGHAN all, as employees of the State of California, acted under color of state law. Defendants DAVID CHU M.D. and CLINT SALO D.O also acted under color of state law, acting as willing participants in joint action with the State and its agents. The Defendants had no probable cause to seize and confine the plaintiff to College Hospital for 72 hours based on a 5150 application.  They accomplished an illegal seizure and imprisonment by knowingly and maliciously fabricating and using multiple false statements for the purpose of depriving the plaintiff of his freedom.

63. The defendants' conduct was the proximate cause of harm and damage to the plaintiff and by reason of the foregoing alleged acts and conduct the PLAINTIFF

is entitled to damages against defendants according to proof at trial.

### NINTH CLAIM

**NEGLIGENCE (28 U.S.C 1367) AGAINST ALL DEFENDANTS**

64. Plaintiff incorporates by reference each and every allegation contained in all previous paragraphs as though fully set forth.

65. The Defendants, each and every one of them acted with gross and deliberate negligence in imprisoning and mistreating the plaintiff. Defendants RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON,  MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE, CHP SARGEANT WAUGHAN all, as employees of the State of California, acted under color of state law. Defendants DAVID CHU M.D. and CLINT SALO D.O also acted under color of state law, acting as willing participants in joint action with the State and its agents. The Defendants had no probable cause to seize and confine the plaintiff to College Hospital for 72 hours based on a 5150 application.  They accomplished an illegal seizure and imprisonment by knowingly and maliciously fabricating and using multiple false statements for the purpose of depriving the plaintiff of his freedom.

66. The defendants' conduct was the proximate cause of harm and damage to the plaintiff and by reason of the foregoing alleged acts and conduct the PLAINTIFF is entitled to damages against defendants according to proof at trial.


## TENTH CLAIM

### FRAUD (28 U.S.C 1367) AGAINST ALL DEFENDANTS

67. Plaintiff incorporates by reference each and every allegation contained in all previous paragraphs as though fully set forth.

68. The Defendants, each and every one of them, deliberately acted fraudulently to cause the plaintiff to be imprisoned on a fraudulently obtained 5150 hold. Defendants RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON, MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER KEANE, CHP SARGEANT WAUGHAN all, as employees of the State of California, acted under color of state law. Defendants DAVID CHU M.D. and CLINT SALO D.O also acted under color of state law, acting as willing participants in joint action with the State and its agents. The Defendants had no probable cause to seize and confine the plaintiff to College Hospital

for 72 hours based on a 5150 application.  They
accomplished an illegal seizure and imprisonment by
knowingly and maliciously fabricating and using
multiple false statements for the purpose of
depriving the plaintiff of his freedom.

69. The defendants' conduct was the proximate cause of
harm and damage to the plaintiff and by reason of
the foregoing alleged acts and conduct the PLAINTIFF
is entitled to damages against defendants according
to proof at trial.

## ELEVENTTH CLAIM

### DEFAMATION (28 U.S.C 1367) AGAINST ALL DEFENDANTS

70. Plaintiff incorporates by reference each and every
allegation contained in all previous paragraphs as
though fully set forth.

71. The Defendants, each and every one of them, acted
individually and deliberately to defame the
plaintiff, both by libel and slander. Defendants
RACHAEL LASOTA, MAKSIM DEGTYAR, KIM WILSON,
MARIANNE ECKHART, CHP OFFICER JEREMY TOLEN, CHP
OFFICER KEANE, CHP SARGEANT WAUGHAN all, as
employees of the State of California, acted under
color of state law. Defendants DAVID CHU M.D. and
CLINT SALO D.O also acted under color of state law,

acting as willing participants in joint action with
the State and its agents. The Defendants had no
probable cause to seize and confine the plaintiff to
College Hospital for 72 hours based on a 5150
application.  They accomplished an illegal seizure
and imprisonment by knowingly and maliciously
fabricating and using multiple false statements for
the purpose of depriving the plaintiff of his
freedom.

72. The defendants' conduct was the proximate cause of
harm and damage to the plaintiff and by reason of
the foregoing alleged acts and conduct the PLAINTIFF
is entitled to damages against defendants according
to proof at trial.

### TWELVETH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (28 U.S.C 1367) AGAINST ALL DEFENDANTS

73. Plaintiff incorporates by reference each and every
allegation contained in all previous paragraphs as
though fully set forth.

74. The Defendants, each and every one of them, acted
individually to intentionally inflict emotional
distress on the plaintiff. Defendants RACHAEL
LASOTA, MAKSIM DEGTYAR, KIM WILSON,  MARIANNE
ECKHART, CHP OFFICER JEREMY TOLEN, CHP OFFICER

KEANE, CHP SARGEANT WAUGHAN all, as employees of the State of California, acted under color of state law. Defendants DAVID CHU M.D. and CLINT SALO D.O also acted under color of state law, acting as willing participants in joint action with the State and its agents. The Defendants had no probable cause to seize and confine the plaintiff to College Hospital for 72 hours based on a 5150 application. They accomplished an illegal seizure and imprisonment by knowingly and maliciously fabricating and using multiple false statements for the purpose of depriving the plaintiff of his freedom.

75. The defendants' conduct was the proximate cause of harm and damage to the plaintiff and by reason of the foregoing alleged acts and conduct the PLAINTIFF is entitled to damages against defendants according to proof at trial

## DEMAND FOR JURY

Plaintiff DEMANDS THAT EACH OF HIS CLAIMS BE TRIED BEFORE A JURY

## PRAYER

Wherefore, plaintiff prays for judgment against these defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages, general damages, special damages, and other sums according to proof;

2. For a money judgment for mental pain and anguish and emotional distress according to proof at trial;

3. For punitive damages against the individual Defendants in an amount sufficient to make an example of them and to deter others;

4. For costs of suit

5. For pre and post-judgment interest;

6. For such order and further relief as this Court deems just.

Dated this 4th day of May, 2015

By: _____

ROBERT MARKMAN
Pro Se Plaintiff

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

### I. (a) PLAINTIFFS ( Check box if you are representing yourself ☒ )

ROBERT S. MARKMAN

### DEFENDANTS ( Check box if you are representing yourself ☐ )

**(b)** County of Residence of First Listed Plaintiff    LOS ANGELES
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

ROBERT MARKMAN
18554 FRANKFORT STREET, NORTHRIDGE, CA 91324
818-998-0362

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

### V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ UNSPECIFIED

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. SECTION 1983 VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property |  | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** |  | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation |  | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV |  | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts |  | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 690 Other |  |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☒ 440 Other Civil Rights | **LABOR** |  |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act |  |
|  | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations |  |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act |  |
|  | ☐ 230 Rent Lease & Ejectment |  | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act |  |
|  |  |  | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation |  |
|  |  |  | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act |  |

**FOR OFFICE USE ONLY:** Case Number: _____ CV15 3335

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **QUESTION A:  Was this case removed from state court?** | **STATE CASE WAS PENDING IN THE COUNTY OF:** | **INITIAL DIVISION IN CACD IS:** |
|---|---|---|
| ☐ Yes  ☒ No  If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| **QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?** | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?** | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no, " skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION D:  Location of plaintiffs and defendants?** | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION.  Enter "Southern" in response to Question E,  below, and continue from there.  If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the EASTERN DIVISION.  Enter "Eastern" in response to Question E,  below.  If "no," your case will be assigned to the WESTERN DIVISION.  Enter "Western" in response to Question E, below. ⬇ |

| **QUESTION E: Initial Division?** | **INITIAL DIVISION IN CACD** |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN DIVISION |

| **QUESTION F: Northern Counties?** | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☐ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**    _Robert Mahan_    DATE:  5-4-15

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |